**BOARD OF WATER ENGINEERS of the
State of Texas, Appellant,**

v.

**John WILFERT, Appellee.**

No. 10259.

Court of Civil Appeals of Texas.

Austin.

Jan. 12, 1955.

Rehearing Denied Feb. 9, 1955.

John Ben Shepperd, Atty. Gen. of Texas, Thomas Black, Asst. Atty. Gen., for appellant.

LeRoy McCall, Hamshire, W. S. Gideon, Austin, Powell, Wirtz, Rauhut & McGinnis; Ben H. Powell, Jr., W. Morgan Hunter, William A. Brown, Austin, for appellee.

HUGHES, Justice.

This suit was brought by appellee, John Wilfert, against the constituent members of the Board of Water Engineers of the State of Texas, hereinafter called "Board". B. E. Quinn, Sr. and other parties intervened.

Appellee alleged in his petition that he was the owner of Water Permit No. 267 issued by the Board in 1918 which authorized him to appropriate 1,500-acre feet per annum of the waters of Taylor's Bayou in Jefferson County and that he had applied to the Board for permission to exclude certain lands from the permit area as described in such permit and amendments thereto and to include additional lands therein but that the Board had granted such application in part only. His prayer was that the Board be ordered to grant such application in toto.

The case was tried to the court upon an agreed statement of facts and judgment was rendered as prayed for by appellee. The Board only has appealed.

The original permit area pertinent to Permit No. 267 was 1,000 acres. In 1942 this permit was amended, under authority of the Board, to include additional acreage a portion of which was owned by B. E. Quinn, Sr. and the heirs of J. R. Bevil, such owners having given the Board written consent to the inclusion of their lands in the permit area.

Following the inclusion of their lands in the permit area Mr. Quinn and the Bevil heirs paid appellee for the water used on their respective properties.

The effect of granting appellee's application in full would be to exclude from the permit area the Quinn and Bevil lands and this the Board declined to do.

It was agreed between the parties that conservation of water is not an issue in this case and the water involved has been and

will be put to beneficial use whether appellee's application is granted or rejected.

It was also stipulated that the Board has interpreted arts. 7506 and 7507, V.A.C.S. to require refusal of applications for change of place of use of water permits insofar as such change would exclude from the permit area lands whose owners protested such exclusion and that the owners of the Quinn and Bevil lands had duly entered their protests.

Articles 7506 and 7507, supra, provide, in part, that the Board shall reject all applications relating to the appropriation of surface waters " * * * if the proposed use will impair existing water rights * * *" (7506) and approve such applications if the proposed appropriation " * * * does not impair existing water rights * * *" (7507).

If there are any "existing water rights" in favor of the Quinn and Bevil lands they stem from their inclusion in the permit area and from the provisions of Arts. 7555, 7556 and 7559, V.A.C.S., which read:

> "All persons who own or hold a possessory right or title to land adjoining or contiguous to any dam, reservoir, canal, ditch, flume or lateral, constructed and maintained under the provisions of this chapter, and who shall have secured a right to the use of water in said canal, ditch, flume, lateral, reservoir, dam or lake, shall be entitled to be supplied from such canal, ditch, flume, lateral, dam, reservoir or lake with water for irrigation of such land, and for mining, milling, manufacturing, development of power, and stock-raising, in accordance with the terms of his or their contract." (7555)

> "If the person, association of persons, or corporation owning or controlling such water, and the person who owns or holds a possessory right or title to land adjoining or contiguous to any canal, ditch, flume or lateral, lake or reservoir, constructed or maintained under the provisions of this chapter, fail to agree upon a price for a permanent water right, or for the use or rental of the necessary water to irrigate the land of such person, or for mining, milling, manufacturing, the development of power, or stock raising, such person, association of persons, or corporation shall, nevertheless, if he, they or it, have or control any water not contracted to others, furnish the necessary water to such person to irrigate his lands or for mining, milling, manufacturing, the development of power or stock raising, at such prices as shall be reasonable and just, and without discrimination." (7556)

> "The permanent water right shall be an easement to the land and pass with the title thereto; the owner thereof shall be entitled to the use of the water upon the terms provided in his or their contract, with such person, association of persons or corporation, or, in case no contract is entered into, then at just and reasonable prices and without discrimination. Any instrument of writing conveying a permanent water right shall be admitted to record in the same manner as other instruments relating to the conveyance of land." (7559)

There is no stipulation in the record before us as to whether Quinn and Bevil had failed to agree with appellee upon a price for permanent water rights for their lands or that they had failed or refused to enter into a water contract with him.

Nor does this record contain a stipulation that the Quinn or Bevil lands are, or are not, contiguous or adjoining lands within arts. 7555 or 7556, supra.

This case has been briefed here on the assumption that the Quinn and Bevil lands had no contractual right to water from appellee and apparently was tried below upon the same assumption.

The same cannot be said, however, as to whether or not such lands were adjoining or adjacent to appellee's water facilities within the meaning of the articles cited above. The parties in their briefs make

flatly contradicting statements regarding this.

We do not believe that we should attempt to decide the important questions presented by this appeal in the absence of stipulations or fact findings on the matters we have mentioned.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.